Good morning, Your Honors. I'd like to reserve seven minutes for rebuttal. My name is Philip Dyson. I represent the appellants in this matter, the Old Gringo business entities, as well as the individual defendants, Ernest Tarrout and Jan Ferry. There's three issues here that I think, as a matter of law, this Court needs to address to either reverse the judgment which has been entered against the defendants in the entirety or reduce it substantially. The first I'd like to talk about is the amount of economic damages. The history is the jury came back with a verdict a little in excess of $1,200,000. The District Court rightfully so found there was insufficient evidence to support this verdict and vacated it. And what did it do? It looked at the period from January 2013 till September of 2015, during the time Ms. Wright worked at Old Gringo, after the time that she was allegedly gifted this 5%, took what the benefit was that she got from Old Gringo, from the salary and bonuses, versus the detriment that she was able to prove. Now, that's critical here for my analysis as I get later on. Never in the seven years of this litigation, seven, did the Ms. Wright allege that her reliance period was any less than from January 2013 through September of 2015. Not a once. You won't see it in the pleadings. You won't see it in the trial transcripts. You won't see it in the arguments. And the District Court came to a calculation that from the period of January 2013 to September of 2015, Ms. Wright actually got a benefit in excess, in actually $377,260 more in benefit in total than detriment. That's absolutely correct. And the District Court should have stopped then and there and entered judgment on behalf of the defendants. But it didn't. Instead, the District Court only looked at 2013. It looked at what her interest in gain day was during that period versus the salary she had got and found that she had damages of $157,500. Now, as I stated earlier, you will not find one scintilla of evidence that Ms. Wright ever alleged that 2013 was only the time period. In fact, you will never see in any of the calculations and damages which are required in federal court for only 2013. Only the District Court did so. Why? We don't know. Maybe it was because Ms. Wright proffered alleged damages for the 14 and 15 period, which the District Court said were counterfactual, speculative, and inadmissible. I submit to you it's not our burden. It's not the defendant's burden to submit what Ms. Wright's damages her. That's her burden approved for that period. She didn't. What we did is we submitted the benefit that she got during that time period. I have argued, we have argued in our brief, the Blanton case is specific on this. Blanton versus Mobil Oil. Now, in that case went over an eight-year period, and what happened is in that one, the jury came up with a damage analysis on a yearly basis. When they found that there was no damages or actually a benefit to the plaintiff by the defendant's behavior, they put zero in the jury verdict. The Blanton court said, that's not the way you do it. You have to look at the totality of it. If you have a gain in one year, and you have a detriment in another year, in that, you add them up and you come to a figure at the end. But isn't Blanton distinguishable because Blanton itself involved a multi-year contract, and you don't have a multi-year contract here? In this, we had a contract, Your Honor, that Ms. Wright stayed there based on what she said was her alleged detriment. In the Blanton case, yes, it went over a time period, but in this case here, she stayed in those years and she said that that was part of the, quote, reliance contract that she had with Old Gringo, to stay there during that period as an owner. She alleged that, she pleaded, and she testified to it. I think, Your Honor, the district court got it right when it added in the time period. The issue, Your Honor, is if you take the argument that it's, there's no eight year contract as there was in Blanton here. How could you, do you have a reliance period that's measured by the time Ms. Wright was there? That's the appropriate time period. Ms. Wright said she stayed there for that entire period, from January 2013 till she left Old Gringo in September 2015, based on her reliance that she had been made an owner. She had said, I was told I was an owner, work harder and do all of that during that time period. I believe, Your Honor, based on that, there should be no economic damages awarded to Ms. Wright in totality during that time period. There being no economic damages, there cannot be any emotional distress damages, no punitive damages, and the court, the lower court should have entered judgment for the defendants at that point in time. Turning now, Your Honor, to the second point, which is the emotional distress damages. If the court leaves the economic damages, affirms them as they are, I think the emotional distress damages should be reversed as a matter of law. And why is that? 3343 of the California Civil Code talks about the allowable measure of damages in cases involving the purchase, sale, or exchange of property. That's what we have in this case, and the case is cited. Talk about that. The trial court erred when it held that 3343 didn't apply to Ms. Wright's claims. The district court said in its response in the post-trial motions that the defendants had cited no authority regarding the applicability of 3343. That's true, Your Honor, because at trial, everyone, including Ms. Wright, the defendants and the district court, took the position that 3343 did apply. And what's the evidence of that? Prior to trial, Ms. Wright argued extensively in her proposed jury instructions that 3343 is applicable to this case. But she also sought a motion. When I looked at the record on this and I read everything, I was confused by the record in a couple of ways because the substantive jury instructions on the misrepresentation claims, and there's a couple of them, don't look like they're 3343 jury instructions. And then you get to the damages instruction, and it's certainly not a 3343 jury instruction on damages. And there's another one that was, that the district judge didn't give. And then at the end of the day, the judge said, this wasn't a 3343 claim. And it didn't read like one when I read the jury instructions. And I also didn't see an objection. I know there was an objection initially when you submitted jury instructions to the court. But then when the court went through each jury instruction and got to the one about damages and there was emotional distress damages included, I didn't see an objection to say, wait a minute, you can't do that. 3343 is clear, no emotional distress damages. So, I'm confused by the record on this. And I guess it looks to me like this did go to the jury for the reasons that I said on a claim that was just a general misrepresentation or fraud claim. And it wasn't limited to this 3343 claim. And so, can you help me understand why I'm wrong about that? No, I don't think you're wrong, Your Honor. I think you've got it right in that there. First, there was a written objection which we made to that was overruled, which was subsumed when we got to the jury instructions, correct? We always maintain regarding that there. What I think happened here is that the 3343, we went through those instructions and the court then crafted their own instruction from it. Which, we had already made the written objection regarding it. We didn't have to go back on the record regarding it at that time. But we felt that then as well as now as a matter of law, emotional distress damages were not available. And that's what we've argued to the court in the post-trial motions as a matter of law. I think you made a good point regarding the fraud. Let's talk about that there, because we can jump to that. Under 3343, we know emotional distress damages are not allowed, period. Now we get to just garden variety fraud. And common law is that emotional distress damages are generally not recoverable unless it's under certain very distinct circumstances, which are very rare. Those being intentional outrageous conduct, trespass or nuisance, or insurance bad faith. None of those exceptions apply in this case here, your honor. I think the court took the inverse that under fraud, emotional distress damages are generally allowed. Under common law fraud, they are not unless those particular circumstances are met. And in this case, they're not. This is a garden variety business dispute case, your honor. That's all it is. And so counsel, there's a case that the other side called Sprague. That's the car repair case where the court of appeal in California said that even, it's a business dispute, you bring your car in for repairs and the car isn't repaired. In that case, they did allow emotional distress damages. So how would you distinguish the Sprague case from our situation here? Sprague is entirely the facts of that, your honor, have no relevance in this case here. They don't meet that. In Sprague, they went back and forth. She kept going back and forth to get it repaired. She took it in, they said they repaired it. They gave it back to her, it didn't work. She went in, they said it was repaired. They came back again, it didn't work. It was a number of times that it came back and forth. So it's the act of not the repair, but the act of the representation that was done on numerous occasions over this period of time that they found was the outrageous conduct. You don't have that here, your honor. You don't have those facts in this case. There's no finding by the jury that they were asked to find that this was outrageous conduct by the defendants in this case is to miswrite. I guess what I'm trying to understand, I appreciate the distinction, but in that case, they said 3343 did not apply. And I did not read the case to suggest that there was an exception to 3343 for outrageous conduct, it just said it didn't apply. And so I'm trying to understand from a legal basis, is there a way legally to distinguish Sprague from our case? Is it a different type of business transaction or is it just the factual distinction you made? No, it is a different type of business transaction. What I believed is 3343 does apply, your honor, but if it doesn't, as one of the justices talked about earlier, and we used that example that the instructions of 3343 were not given. That we go to just basically common law fraud, we default to that then. That possibly maybe that's what was brought in this case here. Under that, you would have to meet one of the three exceptions, which I don't think this case meets. So do you agree that the instructions that were given were, as you term it, garden variety fraud? Correct. And they were not a 3343 instruction? Well, I think we objected to 33, we objected that the language regarding the emotional distress taken out as a matter of law should not have been allowed to go to the jury. I think that 3343 should have been the instruction regarding it without the emotional distress because of the transaction. I think the court's drafting of the combined motion, your honor, was error as a matter of law. So let me give you a hypothetical. And my question is going to eventually ask you if this is a case that would be subject to 3343. So that's what I'm asking about. So say it was a two-partner law firm and they had an associate and they told their associate, you bill your hours for the next two years, we will make you a partner. And as they're going through the two years, they tell him repeatedly, you're going to be a partner, you're doing great. He gets to the two-year point, he's billed all his hours, and they said, we never said that. And then there's emails that surface that show they said it and they absolutely intended to defraud him. Is that a 3343 claim? Your honor, you've fallen into the trap of the Apalis brief. Where they say there was a promise to do something, 40 or 50. It's actually 63 times in total in the brief. And I know my facts are a little different. But, I'm sorry, excuse me, your honor. So I know my facts are a little different than the case here, but is that a 3343, and then you- That may go into promissory estoppel, which may be outside of 3343, because in this case, there was an immediate transfer, according to Ms. Wright, of an interest. Which is defined by 3343, and the case is cited, your honor, in that. Ms. Wright said, your honor, that she was made an owner of Old Gringo at that meeting. That she could have left the next day with that interest, and she still would have been an owner of Old Gringo. Not that she- Counselor, you wanted to save seven minutes? You wanted to save seven minutes. You're down to four. I am. Thank you. You still want to save? No, I'll go on and I'll save just less than that. In this case here, your honor, she was given that interest immediately. That's the 3340 case distinctly, and we made those objections at the time. And I think that that's the instruction that should have went regarding it. The last is the gift law, and that one's simple. Gordon V Barras couldn't be more on point. The gift law is set up to protect the donors in this situation where an alleged oral gift is made. Requires some kind of written evidence. There's not one scintilla. Stock certificate, corporate entry, tax return, not a piece of evidence, the back of a napkin, email back and forth anything. And what the court said is, the court said gift law does not apply to fraud. There is no law to that effect. In fact, I would submit to you, your honors, that's exactly why the reason is. Because you have a he said, she said situations, which deals specifically with fraud in that regard. And that based on that alone, this court should reverse judgment. I'll reserve the rest of my time. Thank you. Good morning, your honors, may I proceed? Good morning. May it please the court, your honors, my name is Matthew Norris. I have the privilege of representing Marcia Wright, who is the plaintiff in the case below. Is the appellee today on the original appeal and also has cross appeal. Rather than try to reserve any of my time, what I'm going to do is rebut the original appeal, which I think my colleague, Mr. Dyson, reduced to his three issues very succinctly. And then, if the court is satisfied with my discussion on that, then I'll transition into the cross appeal, unless the court has something different in mind. And so I'll go ahead and proceed that way. And obviously the court will be the ultimate arbiter of how I use my time. Let me take the issues in reverse order. And I think they're, that Mr. Dyson raised them, and I think they're fairly easy. The problem with the application of gift law, actually there are several problems with the application of gift law in this case. And the first is that Ms. Wright never raised it. She never attempted to recover on gift law. And it was not included in the jury instructions for that reason. The defendants do not get to choose plaintiff's remedy. What was this? Was this a, was it a gift? Was it a transfer for value? Or was it a fraudulent misrepresentation? It was a promise. So it was, so the case was tried on the theory that this was a promise. And fraudulent, it was, did it sound in fraud?  Yes it did, your honor. And not to jump into my cross appeal, but the, there were actually two aspects of the case. There was both a set of legal remedies, and those all sounded in essentially fraud. You know, we had negligent misrep, intentional misrep, and also concealment. But everything sounded in fraud that was presented to the jury in a non-advisory capacity. Presented to the jury in an advisory capacity only were promissory estoppel and unjust enrichment. Now on the equity side, which was tried to the honorable district court, we had promissory estoppel, unjust enrichment, specific performance, as well as a couple of other claims that I haven't bothered to raise here or discuss in the cross appeal. So yeah, this was a false promise. It was a promise that was not kept. And it certainly wasn't a gift. No one testified telling them that it was a gift. Certainly Ms. Wright didn't testify that it was a gift. And they didn't testify that it was a gift either. And that leads me into my next problem with the gift theory, which is that, you know, it's a little bit of a, and I mean no offense to the gold gringo parties or their counsel, but it strikes me as a little bit of a retroactive conception, you know, of what actually happened at trial. If this were really a gift and if there were a delivery problem, you would have expected testimony to that effect at trial. And there was none. I'm not sure that the word gift even appeared in the trial transcript except from counsel. I don't believe that anyone ever said the word gift, any witness ever said the word gift. And certainly we didn't argue it. The other problem with gift law, very briefly, is that if you subject this case to gift law, then by logical extension, you would enable gift law to swallow a promissory estoppel. You would enable it to swallow a fraud. You would enable it even to swallow some breach of contract claims. Because all a false promissor would have to do when confronted on the promise in litigation would be to take a step back and say, oh, wait a minute. I intended that to be a gift. There's no evidence that I did so, but I intended that to be a gift. And as a result, there was no delivery. And so you have an attempt to import retroactively gift law into the case, but it's also done in a way that, frankly, without trying to overstate the matter, is fairly insidious because it would enable any false promissor to later claim in litigation, whether at the trial stage or apparently here at the appellate stage, that their false promise, because it was not executed, and the reason why it wasn't executed was because it was false, was meant to be a gift. And that cannot be the law we submit, and gift law cannot be that broad and swallow up basically every other doctrine relating to false promises. I think I can turn very, very briefly to the emotional distress argument. I think we had some excellent questions. There from the panel, this wasn't a 3343 claim. And so again, you have a situation similar to gift law, where a 3343 comes off as something that was retroactively imported. Why were you talking about 3343 in connection with the damages instructions? Why was I talking about it? You were pressing for an instruction, and you were saying, you were citing the 3343 as the basis for the instruction. Yes, Your Honor. What I was doing there, that was actually, if I'm remembering the background to support the answer to Your Honor's question correctly, the reason why I was mentioning that was simply to illustrate that the emotional distress damages were available under garden variety fraud, which is what we were doing. I think where 3343 came up was on the issues that are in the cross appeal. I think the only reason that 3343 was mentioned was to support the premise that you can indeed have legal remedies and equitable remedies, and that it's not an inadequate remedy at law. I think that's the only context in which we raised 3343. Certainly, I did not argue that. I was trial counsel in this case. Certainly, I did not argue that to the court. I didn't ask for an instruction on 3343. We never pleaded it. It appeared nowhere. And the district court, I think correctly, deemed this to be a garden variety fraud case, submitted it. I would submit that California law is quite clear that emotional distress damages are available for garden variety fraud cases. I was going to say, I'm reading. I think I have the same question that my colleague does. So I'm reading ER 148 through 151, I would say. And that is special instruction proposed by plaintiff fraud tort damages. And in that instruction, it looks like you cite 3343 four times. I'm sorry. And so that would be claimed for the jury, correct? Not for the equitable stuff, for the district court. I don't believe so, Your Honor, because at that point, what we were still trying to do didn't have anything to do with emotional distress damages. What we were trying to do at that point was, we were actually, I was actually, I'll say, and my client were trying to convince the district court that benefit of the bargain or expectation damages should be available for promissory estoppel and unjust enrichment. So that's why that was being cited. Ultimately, the district court very insistently found that that was not available and that benefit of the bargain damages would not be available except in response to equitable claims. And that goes to the exchange that I had with the court. It appears on page 41. That's an ECF citation of our brief. And that was 6 ER 1265 13 to 1266 12, line 13 and then line 12 on the subsequent page. That's where I asked the court, you know, in paraphrase, wait a minute, how are you not effectively, Your Honor, to directing it to the district judge? How are you not making a directed verdict or motion for summary judgment here on the ownership interest? Because you're effectively saying there's no way for Ms. Wright to recover on the ownership interest without this. And I was trying to get every argument in I could. And that's why I was raising 3343. But it didn't matter. The district court was not persuaded. The district court told me he didn't want to limit my creativity and then told me that benefit of the bargain damages were not available. Said if it was a breach of contract case, sure. And then I pointed out, well, but we still have a promissory estoppel claim, which is a contract substitute. And then district court responded. And again, I'm paraphrasing. I don't mean to misquote. But the district court responded by saying, yeah, and we'll take that up, Mr. Norris, at the appropriate time after the jury verdict on equitable matters. So that's why that was being raised. But certainly in the context of emotional distress damages, we never requested that. And the court didn't adopt it. And we didn't have a problem with that. And I don't think we raised any objection to it. And again, this was a garden variety fraud claim. Yes, I was trying during the course of the entire proceeding. I was trying to get the jury to hear in a non-advisory role the promissory estoppel claim and the unjust enrichment claim, because I thought that bore on legal restitutionary remedies, not equitable remedies. Failing that, I tried to get the court to instruct the jury on damages. I also note one thing, too. And this is not covered in my brief. So forgive me. I don't mean to deviate. It's definitely covered in the record, however, that the jury actually, tellingly, came back with a question. I think they came back with three questions. The total might have been two. But I'm fairly sure the first question they came back with effectively asked the district court to clarify, are we supposed to be calculating the ownership interest here? And the district court's response to that was simply to read them the appropriate jury instructions again. So effectively, that was a no. And of course, because the promissory estoppel and unjust enrichment claims were in an advisory basis only, there was no way that they could assign damages to those claims. The verdict form imposed by the court did not include damages claims there. So that's the answer there as far as emotional distress damages. So let me follow up, then, with the question about closing. So in closing, I'm looking at ER 1329 to 1330. You said that meeting was about keeping Ms. Wright on board, doing anything they needed to to make sure that Ms. Wright continued to provide services for Old Gringo. Yes. So when I read that, the argument as I read it was that, look, they were trying to shine on Ms. Wright for her to stay with the company. And that's why they were promising this 5%, which was a lie. And they did that in my word here. You didn't use this word, but my word is they did it in exchange for keeping her on board. And the jury bought the theory. And that's why you look at that jury verdict. And again, and again, and again, they believe that she was defrauded. And she was tricked into doing this. Now, that being the case, when you look at the language of 1343 is mail fraud. I was a prosecutor for a long time. That's why I keep saying that. 3343, I look at that language and it says one defrauded in the purchase, sale or exchange of property. Why doesn't this fit into that exchange of property? It's an exchange of 5%, which was a lie. That was the fraud in exchange for her staying with the company. Why doesn't that fit into 3343? Well, I think it does, Your Honor. But only in what the district court found to be the equitable context. Because the district court effectively took away Ms. Wright's ability to recover that property. Either the ownership interest, which is what we contended, or the 5% profit share that Mr. Tarrant testified about, which the district court never referred to, as far as I'm aware, in any papers. But that was their version of events. That was the property that was taken away. That was the value of the promise that was never fulfilled. And that was the unjust enrichment because that was retained as a benefit. And so the district court was very clear that it wasn't going to allow submission of those damages to the jury and ultimately did not allow submission of those damages to the jury. I don't believe that 3343 was the proper instruction to the jury to foreclose economic damages. I think that the argument that I may have been making, Your Honor, was that 3343, if it is applicable, which the district court found, I think probably correctly that it wasn't, at least if it was going to instruct the jury on the legal damages only as it did, pertain to that property interest, pertain to the ownership interest, or the 5% profit share. And that would constitute a property interest. So that's the answer to that question. So your answer then is that 3343 applies to certain claims in this case, but not all of them? I think the way the district court analyzed the claims, and we don't contest this, it doesn't apply to anything. Because we have equitable arguments that don't sound in 3343. We were attempting, and I really should say I was attempting, at the trial stage, particularly during the charge conference or the instructions conference, Your Honor, to use the better term, the civil term, I was attempting to do anything I could to convince the district court that the district court should allow the jury to consider these damages. That's the only place that 3343 came in. The district judge was quite insistent, no, we're not going to submit those to the jury. There's no benefit of the bargain damages available here. There's reliance damages only. So 3343 at that point is out the window. And I certainly never made any argument that 3343 should apply to emotional distress. No, I appreciate that you never made the argument. I'm trying to assess, the other side in this case is arguing no emotional damages at all. Because 3343 covers all the claims in this case. And I'm trying to understand why they are wrong. The Sprague case seems to definitely help you. I get that. But I'm trying to understand, just by reading the language of 3343, says exchange of property. This seems to me an exchange of property or fraud relating to it. The property being 5% of the company, which is what the damages the jury found initially before the remitter seemed to confirm. So I'm just trying to understand why 3343 with that explicit language doesn't apply to the fraud as it was argued in this case. Your Honor, because I don't think the jury was instructed that way. And so I don't think there's any way to conclude that the jury did award the amount pre-remitter based on 3343. I don't think they ever heard about 3343. I guess I'm asking a different question. 3343 is a limit on damages. Yes. So why wouldn't that limit apply in this case? Because it wasn't asked for by the plaintiff. The plaintiff was seeking to recover on the legal side as limited by the district court for garden variety fraud. And 3343 does not override garden variety fraud cases. If it did, then the only way to recover for fraud in the state of California would be under 3343. And we submit that is not the law. But just so it's your position that, because as I read 3343, it talks about the exchange of property. Your argument is, what would it apply to, I guess is what I'm saying. Under your reading of 3343, when would it apply? Well, under our reading of 3343, it would apply if, frankly, I'm not sure, Your Honor. Was there an exchange of property in this case? No, because the promise was false. I guess that's the point, is that there was no exchange of property. Yeah, and I think Your Honor should, thank you, Your Honor. And I think that's, I don't know. I don't want to put words in your mouth, but I. Yeah, I mean, it's. That's where I'm confused about the whole basis for this case, like how it was tried. And it seems like the strange thing to me was the separation out of claims and the various arguments that went to different claims. And I don't know why the judge had an advisory jury on the equitable claims. I mean, who came up with that one? But the judge, certainly we didn't. Okay, all right. And, Your Honor, if I can, and I'll certainly go back to Judge Owens's question in a second if I can. But, Your Honor, I think that, yeah, I have a lot of problems with the way that the case was tried also. I think the biggest problem that I have is that, first of all, the equity first principle in California seems to have been violated because the court, you know, tried the claim simultaneously. Now, that's fine. But the biggest problem that I have is that the court insistently told me throughout the case, charge conference, pretrial conference, that there was one theory of damages that would go to the jury, and that was detrimental reliance. That's it. And so what that means is that the plaintiff, Ms. Wright, had no adequate remedy at law because her remedy was incomplete. She couldn't get the ownership interest, which our expert valued at originally $1.9 million, updated $2.75 million, or the value of the 5% profit share that they admitted through Mr. Tarrant's testimony existed but was never paid. Our expert valued that, and by the way, all the expert testimony was completely unrebutted, at $970,000 originally and then $1.6 million by the time of trial. So now, basically, you had a lot of damages, and the district court informed me time and time again that those damages weren't going to go to the jury. The only thing that was going to go to the jury was the reliance damages. And so the way that I took that, especially after the exchange that I just cited when I was speaking with Judge Owens, again, 6 ER 1265 and 1266, the way that I took that was we were going to deal with the fraud claims and the legal claims in front of the jury. I don't know why the jury was seated in an advisory capacity to consider promissory estoppel and unjust enrichment. I also don't know why the district court ignored the advisory verdict. Let me ask you, if there was an exchange of property, then wouldn't your client have been entitled to her share of that property? Yes. And did you argue for that? Equitably, yes. We definitely did. We argued for three equitable, three forms of equitable relief. We argued for restitution or unjust enrichment. We argued for promissory estoppel. And we argued for specific performance. And the district court's response in case of all three was to say, no, she had an adequate remedy at law. And really, the only analysis that seemed to be performed was, look, even after remitted her, she still got over $2 million in her legal damages. But that's not the analysis. It doesn't matter what she got in legal damages from the jury. What matters, and I see my time is close up. May I conclude, Your Honor? Yes, you may conclude. Thank you very much. What matters in the analysis is that she had two sets of remedies. This is a mixed remedy case. She had legal remedies on which certain things could be awarded. And she had equitable claims on which certain things could be awarded. And the district court adopted and ratified that approach and stridently kept to it throughout the entirety. What, frankly, very much surprised me was when we got to the equitable briefing and the court simply tossed that aside and said, no, she had an adequate remedy at law. She did not. She could not recover on the ownership interest. She could not recover on the value of the ownership interest. She could not recover on the profit share. What are you seeking in your cross appeal? Well, in the cross appeal, we are seeking an order from the court because, Mr. Venetti, our expert's testimony was unrebutted. We are seeking an award of the $2.75 million if the court believes the ownership interest or an award of $1.6 million if the court believes the profit share that they admitted and testified to. That's the award that we're seeking. That can be awarded under either promissory estoppel or unjust enrichment theory. It was the result of a false promise that was not carried out. And the defendants clearly retained the benefit to which they were not entitled. And that's what we're seeking through the equitable claims. And then I should very quickly say, Your Honor, that if for some reason the court does not endorse either of those approaches, then our fallback is specific performance. The court had no problem with that except, again, that it was an equitable remedy and there was supposedly an adequate remedy at law in order conveying the ownership interest to Ms. Wright or if profit share is what's determined to be the most important thing, conveying that profit share and then payments would be due. That's what we're asking for in the cross appeal. All right. Thank you, counsel. Thank you. Thank you, Your Honors. Thank you, Your Honors. And addressing the issues regarding the equitable, that's already been addressed in the Sonner case, which we cited, that the district court got it right on that, that those were precluded here because there was an adequate remedy at law, which Ms. Wright actually pursued. And the argument in the brief by Ms. Wright was, is that because of the reduction in the award, therefore, she didn't have an adequate remedy. But that's not the point. The point is, did she have that and did she pursue it? And the answer is yes. Can I ask you to answer the question that Judge Owens asked about why or why doesn't 3343 apply in this case, the language? I'm going to get to that. I was just going to address that here to the left, but I can address it to both sides. Justice Owens, you got it right. Sprague was found not to be a 3343 case because there wasn't an exchange of property. In this one here, there was a so-called fraudulent exchange at that meeting, which Your Honor brought up, Judge Wardlaw earlier, regarding that at that meeting. That was the essence of what was pled by Ms. Wright. That's why 3343. That's a clear error of law here that wasn't applied correctly by the district court, which you can remedy in that regard. 3343. So what was the exchange then? Was for her staying there for giving that 5%. And that's, she said she stayed there for it, but she said she got it immediately. That's really important here. You keep seeing... She never got it, right? No, no. She never got it, but... She never got it. So how did she get it immediately? No, in her mind, she had it immediately, Your Honor. Right, but what does it matter in her mind if it wasn't actually given to her, if there actually was not an exchange? Well, no, that is from her premise that there was an exchange at that point in time. That's an exchange of property, a fraudulent exchange of property, which wasn't given, which would make 33... Is her labor property? Excuse me? Is her labor property? Her labor? Yes, her staying and continuing to work at Old Guingo. Is that property? No, she said, Your Honor, she could leave the next day and have the interest. She believed she was an owner as of that day. No property was actually exchanged. No property was exchanged. That's the genesis of her claim, but she believed as of that day, that's when that exchange should have been made, that she was free to leave, not to work there, Your Honor, in that regard. I think the last thing, Your Honor, and I'll conclude with this, is the gift. You asked some questions there. Transfer for value. Well, here, there was a breach of contract claim. There was found to be no consideration in this case. When you have no consideration, you have to leave with a gift. That's all it can be. A transfer of property without consideration is a gift. And I believe under 1146X sequence, of the statutory law here, which is in Gordon v. Barr, is indicative in this case for a judgment which should be entered for the defendant. Thank you. All right. Thank you, counsel. Wright v. Old Gringo is submitted, and this session of the court is adjourned for today. Thank you. All rise. Thank you. This court for this session stands adjourned.
judges: WARDLAW, OWENS, Hinderaker